ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| ROBERT NORMAN DOYLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 308-072 |
| | ) | |
| RALPH KEMP, Warden; ROBERT ROZER, Warden of Care and Treatment; PAT CLARK, Medical Director, H.S.A.; CORRECTION CORPORATION OF AMERICA; JOHN DOES, Medical Contractors; STANLEY BISHOP, Nurse Manager, H.S.A.; and CALIB AJIBADE, Medical Director, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

---

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

---

Plaintiff, an inmate at Scott State Prison ("SSP") in Hardwick, Georgia, filed the above captioned case pursuant to 42 U.S.C. § 1983. Plaintiff is proceeding *pro se* and *in forma pauperis* ("IFP").[1] Because Plaintiff's complaint was filed *in forma pauperis*, it must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984). Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972)

---

[1] While Plaintiff is currently incarcerated at SSP in Hardwick, Georgia, some of the events Plaintiff raises in his complaint occurred while he was incarcerated at Wheeler Correctional Facility ("WCF") in Alamo, Georgia.

(*per curiam*), but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e) & 1915A.

## I. BACKGROUND

*Liberally* construing Plaintiff's complaint, the Court finds the following. Plaintiff names the following Defendants: (1) Ralph Kemp, WCF Warden, (2) Robert Rozer, WCF Warden of Care and Treatment, (3) Pat Clark, WCF Medical Director, (4) the Corrections Corporation of America, (5) John Does, WCF Medical Contractors,[2] (6) Stanley Bishop, SSP Nurse Manager, (7) Calib Ajibade, SSP Medical Director, and (8) John Does, SSP Medical Contractors. (Doc. no. 1, pp. 1, 15-16).

Plaintiff alleges that he entered the Georgia State prison system "carrying a[n] ongoing illness." (Id. at 17). Although not stated explicitly in his complaint, the Court presumes this ongoing illness pertained to his jaw. On May 22, 2006, Plaintiff states that his jaw started to hurt on the left side. (Id.). He requested treatment concerning the pain, and was seen by a dentist. (Id.). The dentist stated he could not diagnose Plaintiff's condition, and as such, referred Plaintiff to an orthodontic specialist. (Id.).

On June 15, 2006, Plaintiff was transferred to WCF. (Id.). Upon his arrival, Plaintiff immediately requested to be seen by a dentist. (Id.). The WCF dentist also stated he could not diagnose Plaintiff and referred Plaintiff to an orthodontic specialist. (Id.). On August 1, 2006, Plaintiff was transported to Macon, Georgia, to an orthodontic surgeon's office.

---

[2]Plaintiff notes that the John Does - Medical Contractors are "responsible for the incompeten[ce] of their medical staff members." (Doc. no. 1, p. 26).

2

(Id.). The orthodontic surgeon diagnosed Plaintiff with "T.M.J" (Id. at 18); the Court presumes Plaintiff is referring to a temporomandibular joint disorder ("TMJ"). On August 4, 2006, Plaintiff was transported to the Medical College of Georgia ("MCG"), where he was seen by two more specialists. (Id.). These specialists purportedly told Plaintiff that he did not have TMJ and that his problem could be "fixed." (Id.). These specialists prescribed Plaintiff a splint to wear in his mouth, as well as medication for his pain. (Id.). Additionally, Plaintiff claims these specialists told him that, if his problem did not improve, he should come back so that they could perform surgery on Plaintiff. (Id.). Plaintiff was sent back to WCF. (Id. at 19).

Plaintiff claims that upon his return to WCF, he was not seen by any medical professional. (Id.). Plaintiff alleges that after two weeks of not being seen by a medical professional, he "put in" a health services request form. (Id.). Two weeks later, Plaintiff was seen by the WCF dentist. (Id.). During this visit, Plaintiff asked the dentist why he was not receiving the pain medication prescribed by the MCG specialists. (Id.). Plaintiff was allegedly informed that, per Defendant Clark's order, he was not allowed to have the prescribed medication because the specific medication was not allowed at WCF. (Id.). Plaintiff was further informed that if he wanted the prescribed medication, he would have to be transferred to a prison that gave out that type of medication. (Id.). Furthermore, Plaintiff was told that the prescription was a recommendation, not an order. (Id.).

Plaintiff was not given the medication prescribed by the MCG specialists; instead, he was given a substitute pain medication that, according to Plaintiff, did not work. (Id.). Plaintiff alleges that because of the pain in his jaw, he was unable to eat, sleep, became sick,

and lost weight. (Id.). In an attempt to receive different, or better, treatment, Plaintiff submitted another medical request to be seen by a dentist. (Id.). Plaintiff was seen by a dentist, and he explained his medical problems to the dentist. (Id. at 20). This dentist put Plaintiff on a "Mechanical Diet" that required Plaintiff's meals (3 per day) to be blended. (Id.). Next, Plaintiff alleges that on August 25, 2006, he was in severe pain because the medication (allowed by Defendant Clark) was not providing any relief. (Id.). Therefore, Plaintiff was again seen by the WCF dentist. (Id.).

Plaintiff steadfastly maintains that Defendant Clark continued to deny Plaintiff access to "any type of real pain medication," because she believed Plaintiff had TMJ (a disorder that cannot be treated). (Id.). Plaintiff was again seen by the WCF dentist on December 13, 2006, because he was in severe pain, as well as on July 2, 2007. (Id.). After the July 2nd visit, the dentist referred Plaintiff to another orthodontic surgeon. (Id. at 20-21). The dentist's request was purportedly denied by Defendant Clark. (Id. at 22).

In an attempt to succeed in being referred to a specialist, Plaintiff contacted his "mental health counselor," who then purportedly requested that Plaintiff be sent to Augusta State Medical Prison. (Id.). However, instead of being sent to Augusta State Medical Prison, Plaintiff was transferred to SSP. (Id.). Petitioner alleges that he continues to receive inadequate medical treatment while at SSP. (Id. at 21-24).

## II. DISCUSSION

### A.  Claims Arising at Scott State Prison

Plaintiff's complaint details allegations of events that are occurring at SSP. However, SSP is located in Hardwick, Baldwin County, Georgia. Baldwin County falls

4

within the jurisdiction of the United States District Court for the Middle District of Georgia. See 28 U.S.C. § 90(b)(2). As the alleged denial and delay of medical treatment at SSP took place in the Middle District of Georgia, the proper venue for these claims is in the that District. See 28 U.S.C. § 1391(b). Accordingly, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's claims against Defendants Stanley Bishop, Calib Ajibade, and John Does - Medical Contractors for SSP, arising at SSP, be **DISMISSED** without prejudice so that Plaintiff may, if he chooses, bring those claims in the United States District Court for the Middle District of Georgia.

**B.** *Respondeat Superior*

While Plaintiff names Defendants Kemp, Rozer, John Does - Medical Contractor for WCF, and the CCA, as Defendants, he does not assert any allegations of wrong doing regarding these Defendants in his statement of claims. In fact, Plaintiff does not mention these Defendants anywhere in his statement of claims. "Section 1983 requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation." LaMarca v. Turner, 995 F.2d 1526, 1538 (11th Cir. 1993) (internal quotation marks and citations omitted). The Eleventh Circuit recently held, a district court properly dismisses defendants where a prisoner, other than naming the defendant in the caption of the complaint, fails to state any allegations that associate the defendants with the purported constitutional violation. Douglas v. Yates, 535 F.3d 1316, 1322 (11th Cir. 2008) (citing Pamel Corp. v. P.R. Highway Auth., 621 F.2d 33, 36 (1st Cir. 1980) ("While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt acts of the defendant

5

caused a legal wrong.")))). Thus, in the absence of an allegation of any connection between any actions of these Defendants with the alleged unconstitutional deprivation, Plaintiff fails to state a claim for relief against these Defendants. On that basis alone, Defendants Kemp, Rozer, John Does - Medical Contractors for WCF, and the CCA could be dismissed.

In the event Plaintiff names any of these Defendants simply because they are supervisors, "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 & 694 n.58 (1978). Likewise, employers and private contractors[3] cannot be sued under § 1983 simply on a theory of *respondeat superior*. See Kruger v. Jenne, 164 F. Supp.2d 1330, 1333-34 (S.D. Fla. 2000)(citing Powell v. Shopco Laurel, Co., 678 F.2d 504 (4th Cir. 1982)) (explaining that employer which provided medical care for state inmates could not be sued under § 1983 on *respondeat superior* theory). To hold an official in a supervisory position liable, Plaintiff must demonstrate that either (1) the supervisor personally participated in the alleged constitutional violation or (2) there is a causal connection between actions of the supervising official and the alleged constitutional violation. Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)). Plaintiff has not

---

[3]Of course, private contractors that run prisons, like CCA, do act under color of state law for purposes of § 1983 liability. Farrow v. West, 320 F.3d 1235, 1239 n.3 (11th Cir. 2003). Nevertheless, as explained herein, the principle that *respondeat superior* is not a cognizable theory of liability under § 1983 holds true regardless of whether the entity sued is a state, municipal, or private corporation. Harvey v. Harvey, 949 F.2d 1127, 1129-30 (11th Cir. 1992).

alleged that Defendants Kemp, Rozer, John Does - Medical Contractors for WCF, and the CCA was personally involved with Plaintiff's medical care.

Similarly, Plaintiff fails to allege a "causal connection" between Defendants Kemp, Rozer, John Does - Medical Contractors for WCF, and the CCA and the asserted constitutional violation. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (*per curiam*) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a history of widespread abuse[4] puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). Here, Plaintiff has proffered no allegations to suggest that the above-named Defendants knew about any widespread abuse or that they were responsible for a custom or policy which resulted in ignoring Plaintiff's rights. Thus, Plaintiff has not made the necessary showing with respect to Defendants Kemp, Rozer, John Does - Medical Contractors for WCF, and the CCA. Accordingly, Plaintiff fails to state a

---

[4] The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added).

claim upon which relief can be granted against these Defendants.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the claims against Defendants Stanley Bishop, Calib Ajibade, and John Does - Medical Contractors for SSP, arising at SSP, be **DISMISSED** without prejudice so Plaintiff can, if he chooses, pursue these claims in the Middle District. The Court also **REPORTS** and **RECOMMENDS** that Defendants Kemp, Rozer, John Does- Medical Contractors for WCF, and the CCA be **DISMISSED** from the case.[5]

SO REPORTED and RECOMMENDED this 19th day of December, 2008, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[5] By separate Order, the Court has directed that service of process be effected on Defendant Clark based on Plaintiff's allegations of deliberate indifference to his health.

8