IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| ROBERT NORMAN DOYLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 308-072 |
| | ) | |
| PAT CLARK, Medical Director, H.S.A., | ) | |
| | ) | |
| Defendant. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

The above-captioned case brought pursuant to 42 U.S.C. § 1983 is now before the Court on Defendant's motion for summary judgment. (Doc. no. 16). Because Plaintiff has not filed any response, the Court deems the motion for summary judgment unopposed.[1] See Loc. R. 7.5. For the reasons stated more fully below, the Court **REPORTS** and **RECOMMENDS** that Defendant's motion for summary judgment be **GRANTED**, that a **FINAL JUDGMENT** be entered in favor of Defendant, and that this case be **CLOSED**.

---

[1] The Clerk has given Plaintiff notice of Defendant's motion for summary judgment, has apprised him of his right to file affidavits or other materials in opposition, and has informed him of the consequences of failing to respond. (Doc. no. 17). Moreover, after noting that Plaintiff had not responded, the Court entered an order instructing him about the effect of failing to respond and giving him additional time to prepare a response. (Doc. no. 21). Accordingly, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied. Of course, the Court acknowledges that the mere fact that the instant motion is unopposed does not entitle the Court to grant the motion without considering the merits. United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Florida, 363 F.3d 1099, 1101 (11th Cir. 2004) ("[T]he district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion.").

## I. FACTS

Plaintiff alleges that when he entered the Georgia State prison system he had a preexisting medical condition, temporomandibular joint disorder ("TMJ"). (Doc. no. 1, p. 17; doc. no. 16, p. 3). On June 15, 2006, Plaintiff was transferred to Wheeler Correctional Facility ("WCF") in Alamo, Georgia. (Doc. no. 1, p. 17). Upon his arrival at WCF, Plaintiff immediately requested to be seen by a dentist because of his TMJ. (Id.). The WCF dentist referred Plaintiff to an orthodontic specialist. (Id.). On August 1, 2006, Plaintiff was transported to Macon, Georgia, to an orthodontic surgeon's office. (Id.). The orthodontic surgeon recognized that Plaintiff had TMJ. (Id. at 18). On August 4, 2006, Plaintiff was transported to the Medical College of Georgia ("MCG"), where he was seen by two more specialists. (Id.; doc. no. 16, p. 3). These specialists prescribed Plaintiff a splint to wear in his mouth, as well as medication for his pain. (Doc. no. 1, p. 18; doc. no. 16, p. 3).

Within a matter of weeks of using the splint, Plaintiff again requested dental care. (Doc. no. 1, p. 17; doc. no. 16, p. 3). Presumably, Plaintiff sought to be referred to another orthodontic specialist (the third such consult); however this request, according to Plaintiff's complaint, was purportedly denied by Defendant Clark, the Health Services Administrator for WCF. (Doc. no. 1, pp. 20-22; doc. no. 16, p. 3 and Clark Aff., ¶ 3). Additionally, Plaintiff alleged that he was not given the medication prescribed by the MCG specialists; instead, he was given a substitute pain medication that, according to Plaintiff, did not work. (Doc. no. 1, pp. 20-22). Thus, Plaintiff alleges that Defendant denied Plaintiff access to "any type of real pain medication." (Id. at 20).

Defendant denies Plaintiff's allegations and states that she does not make medical

and/or dental decisions including whether referrals may be made to outside dental consultants. (Doc. no. 16, p. 4 and Clark Aff., ¶ 3). Rather, Defendant relies on medical and dental personnel to determine the proper medical treatment as well as whether a request for an outside consult should be submitted for a particular patient. (Doc. no. 16, p. 4, 11, and Clark Aff., ¶ 3). For an outside consult to be obtained, the in-house provider at the prison must evaluate the patient, and recommend an outside consult. (Doc. no. 16, p. 4, and Clark Aff., ¶ 4). That recommendation is then forwarded to a utilization review staff outside of the prison for a decision. (Doc. no. 16, p. 4 and Clark Aff., ¶ 4). Thus, Plaintiff's request to be seen by a third specialist was denied by the utilization review staff, not by Defendant. (Doc. no. 16, p. 4 and Clark Aff., ¶ 5).

## II. DISCUSSION

A. **Summary Judgment Standard**

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Applicable substantive law identifies which facts are material in a given case.[2] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When seeking summary judgment, the movant must show, by reference to materials on file, that there are no genuine issues of material fact to be decided at a trial. Clark v.

---

[2]The Court is mindful that for purposes of summary judgment, only disputes about material facts are important. That is, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark, 929 F.2d at 606-08 (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Merely stating that the non-moving party cannot meet its burden at trial is not sufficient. Id. at 608. Evidence presented by the movant is viewed in the light most favorable to the non-moving party. Adickes, 398 U.S. at 157.

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark, 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (quoting Adickes, 398 U.S. at 158-59). A genuine issue of material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

B.  **Merits of Plaintiff's Claims**

Plaintiff, in his complaint argues that Defendant denied him needed medical care for his TMJ. (Doc. no. 1). More specifically, Plaintiff claims that he was dissatisfied with the medication he was provided and that his request to be treated by an outside orthodontic specialist was improperly denied. (Id.). Plaintiff believes that as a result of Defendant's actions, he was not given the proper medication and was denied a third referral to a specialist.³ (Id.)

Defendant, on the other hand, argues that Plaintiff's claims against Defendant must fail, as she did not make any decisions regarding Plaintiff's medical care. (Doc. no. 16, pp. 9-10). Additionally, Defendant asserts that she cannot be held accountable for any purported constitutional violations against Plaintiff based on a theory of supervisory liability.⁴ (Id.).

---

³The Court is confused by Defendant's statement that her denial of an outside specialist consult based on the July 2, 2007 in-house dental visit is the only issue remaining in the case. (Doc. no. 16, p. 4, ¶ 6). Notably, the Court allowed Plaintiff's claims, addressing his dental care – including the pain medication claim – to proceed against Defendant. (See generally doc. no. 9). In any event, despite Defendant's statement that the only issue is the denial of the referral, Defendant does address Plaintiff's allegation that he did not receive pain medication. (Doc. no. 16, pp. 6, 9).

⁴Defendant also attempts to argue that Plaintiff has not exhausted his administrative remedies. The Court is not persuaded by Defendant's argument. Although not provided by Defendant, inmate grievance procedures are governed by SOP IIB05-0001. If the inmate is not satisfied with the Warden's response to the formal grievance, he has five (5) business days from the receipt of the response to file an appeal to the Office of the Commissioner; the Office of the Commissioner or his designee then has ninety (90) calendar days after receipt of the grievance appeal to respond. SOP IIB05-0001 § VI(D)(2), (5). The grievance procedure is terminated upon the issuance of a response from the Commissioner's Office. Id.

Here, Plaintiff submitted his appeal on August 2, 2007 (doc. no. 16, Evans Aff., ¶ 4), thereby complying with his requirements pursuant to the SOP. Notably, Plaintiff signed his complaint in the above-captioned case on July 15, 2008, well past the 90 days that the Commissioner's Office had to issue its response. Indeed, the Grievance Coordinator stated

5

Defendant also asserts that Plaintiff's claim that Defendant was deliberately indifferent to his medical needs must fail because Plaintiff did receive proper medical treatment, and he merely disagrees with the treatment he received. (Doc. no. 16, pp. 10-11).

Bearing the standard for a motion for summary judgment in mind, Defendant's motion for summary judgment should be granted. To survive Defendant's motion for summary judgment, Plaintiff must produce evidence from which a reasonable jury could conclude: (1) that Plaintiff had an objectively serious medical need, (2) that Defendant acted with deliberate indifference to that need, and (3) that Plaintiff's injury was caused by the Defendant's wrongful conduct. Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007) (citations omitted). Turning to the first prong, the Court is aware of Defendant's statement that Plaintiff's "claim should be denied because his condition did not pose a serious medical need." (Doc. no. 16, p. 10). Although, Defendant suggests that Plaintiff does not have a serious medical need, she offers no evidence, let alone medical evidence, to support her conclusory argument.[5] (Id. at 10-11). In any event, the Court need not decide whether Plaintiff had a serious medical need because even assuming for the sake of argument

---

that as of July 20, 2008, "there had been no response to the appeal by the Department of Corrections." (Id.). Thus, the Court finds that it was the Commissioner's Office who failed to comply with its own procedures and respond to Plaintiff's appeal within the ninety days provided. As such, the Court finds Plaintiff exhausted the administrative remedies by following the available procedures to the best of his ability. See, e.g., Callaway v. McRae, Civil Case No. 507-473, 2008 WL 3200728, at *4 (M.D. Ga. Aug. 5, 2008) (concluding that plaintiff exhausted his administrative remedies where the Commissioner did not respond to the appeal within 90-days as required by the standard operating procedure).

[5]As noted at the outset, Plaintiff has not responded to Defendant's motion for summary judgment, thus, there is also no evidence to support the conclusion that TMJ is a serious medical need.

that Plaintiff's TMJ is a serious medical need, he has not shown deliberate indifference.

To show that Defendant was deliberately indifferent to his needs, Plaintiff must offer some proof that Defendant: (1) was subjectively aware of a serious risk to Plaintiff's health, and (2) that Defendant disregarded that risk by (3) following a course of action which constituted "more than mere negligence." Id. In addition, the prisoner plaintiff seeking to show that a delay in medical treatment amounted to deliberate indifference "must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1188 (11th Cir.1994), *abrogated in part on other grounds by* Hope v. Pelzer, 536 U.S. 730, 739 n.9 (2002)); see also Farrow v. West, 320 F.3d 1235, 1244 n.12 (11th Cir. 2003) ("In Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 153 L.Ed.2d 666 (2002), the Supreme Court criticized part of the qualified immunity analysis in Hill, but not Hill's analysis of what constitutes a serious medical need of prisoners.").

There is no evidence in the record showing that Defendant disregarded any risk to Plaintiff's medical needs, nor that Plaintiff received any thing but the proper treatment. In fact, Defendant does not make medical or dental decisions about whether referrals may be made for an outside dental consult. (Doc. no. 16, p. 4 and Clark Aff., ¶ 3). Rather, Defendant relies on medical and dental personnel to determine whether a request for an outside consult should be submitted for a particular patient. (Id.). For an outside consult to be obtained, the in-house provider at the prison must evaluate the patient, and recommend an outside consult. (Clark Aff., ¶ 4). That recommendation is then forwarded to a utilization review staff outside of the prison for a decision. (Id.). Plaintiff's request to be seen by a

third specialist was denied by the utilization review staff, not by Defendant. (Doc. no. 16, p. 4 and Clark Aff., ¶ 5). Therefore, Defendant did not disregard any risk to Plaintiff's medical need.

Second, Plaintiff's TMJ was a preexisting condition to his confinement at WCF. The record reflects, as does Plaintiff's recitation of his statement of claim in his complaint, that while incarcerated at WCF, he received near constant medical attention concerning his TMJ. Plaintiff asserted in his complaint:

> On June 15, 2006, Plaintiff was transferred to WCF. (Doc. no. 1, p. 17). Upon his arrival, Plaintiff immediately requested to be seen by a dentist. (Id.). The WCF dentist stated he could not diagnose Plaintiff and referred Plaintiff to an orthodontic specialist. (Id.). On August 1, 2006, Plaintiff was transported to Macon, Georgia, to an orthodontic surgeon's office. (Id.). On August 4, 2006, Plaintiff was transported to the Medical College of Georgia ("MCG"), where he was seen by two more specialists. (Id.). These specialists prescribed Plaintiff a splint to wear in his mouth, as well as medication for his pain. (Id.). Plaintiff was sent back to WCF. (Id. at 19). Plaintiff alleges that after two weeks of not being seen by a medical professional, he "put in" a health services request form. (Id.). Two weeks later, Plaintiff was seen by the WCF dentist. (Id.).

Similarly, to the extent that Plaintiff avers that Defendant's treatment of his medical complaints was deficient in that he was not receiving the pain medication prescribed by the orthodontic specialists, Plaintiff's argument must fail. Again, the record establishes that Defendant did not make any decisions concerning Plaintiff's medical care; she relied on the professional medical judgment of the dental in-house personnel. In any event, the record reflects, even by Plaintiff's account,[6] that he was given pain medication. Moreover, as

---

[6]Plaintiff alleged in his complaint that he was not given the medication prescribed by the MCG specialists; instead, he was given a substitute pain medication that, according to

8

discussed in detail *infra*, that Plaintiff was not given the pain medication he believed he should receive does not elevate his claim to the level of deliberate indifference.

Indeed, it should be recognized that the mere fact that a prisoner "may have desired [a] different mode[] of treatment" does not give rise to a claim for deliberate indifference. Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985). "Where a prisoner has received . . . medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments." Id. (citation omitted). Put another way, a mere difference in opinion between prison medical officials and the inmate as to the latter's diagnosis or course of treatment will not support a claim of cruel and unusual punishment. Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991); Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989).

Furthermore, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." West, 320 F.3d at 1243 (internal quotation and citation omitted). The Eighth Amendment does not mandate that the medical care provided to the prisoner "be perfect, the best obtainable, or even very good." Harris, 941 F.2d at 1510 (quoting Brown v. Beck, 481 F. Supp. 723, 726 (S.D. Ga. 1980) (Bowen, J.)). As the Supreme Court has explained:

> [A]n inadvertent failure to provide medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the

---

Plaintiff, did not work. (Doc. no. 1, pp. 20-22).

9

> victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Thus, mere allegations of negligence or malpractice do not amount to deliberate indifference. Campbell v. Sikes, 169 F.3d 1353, 1363-72 (11th Cir. 1999) (explaining that medical malpractice cannot form the basis for Eighth Amendment liability); Harris, 941 F.2d at 1505.

Given the facts of this case, nothing in the record supports the conclusion that Defendant disregarded any risk concerning Plaintiff's health, or provided inadequate medical treatment, let alone followed a course of action that was "more than gross negligence." Indeed, the record establishes that, while Plaintiff was incarcerated at WCF his TMJ was properly treated. That Plaintiff would have preferred a different course of treatment and to be seen by another orthodontic specialist is insufficient to generate a dispute of material fact regarding whether Defendant was deliberately indifferent to Plaintiff's serious medical needs. As previously noted, differences in opinion concerning treatment fall well short of establishing deliberate indifference. See Harris, 941 F.2d at 1505; Waldrop, 871 F.2d at 1033. In fact, allegations of negligence or malpractice do not amount to deliberate indifference. Campbell, 169 F.3d at 1363-72 (explaining that medical malpractice cannot form the basis for Eighth Amendment liability); Harris, 941 F.2d at 1505. Moreover, Plaintiff has provided no evidence that the treatment he received was deficient in any way.[7]

---

[7]To the extent Plaintiff seeks to hold Defendant accountable for his medical treatment based on her supervisory capacity, this argument fails. As the Court determined that Defendant has not violated any of Plaintiff's constitutional rights concerning his medical care, Plaintiff cannot maintain a § 1983 action for supervisory liability. Hicks v. Moore, 422

Therefore, viewing the evidence in the light most favorable to Plaintiff, the Court finds that there is no genuine issue as to any material fact related to Plaintiff's deliberate indifference claim based on the alleged failure to properly treat his TMJ.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Defendant's motion for summary judgment (doc. no. 16) be **GRANTED**, that judgment be **ENTERED** in favor of Defendant, and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 21st day of September, 2009, at Augusta, Georgia.

_____
W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

F.3d 1246, 1253 (11th Cir. 2005) (reversing of district court's denial of summary judgment, because the Eleventh Circuit concluded that plaintiff's constitutional rights were not violated, thus, plaintiff could not maintain a § 1983 action for supervisory liability against the defendant). As such, Defendant cannot be held responsible based on her supervisory position.